IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CRUM & FORSTER SPECIALTY**
**INSURANCE COMPANY**,

          Plaintiff,

          v.

**WILLOWOOD USA, LLC; ALLIED**
**WORLD ASSURANCE COMPANY**
**(U.S.); COLONY INSURANCE**
**COMPANY; and REPAR CORPORATION**,

          Defendants.

_____

**Civ. No. 6:13-cv-01923-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

     Plaintiff, Crum & Forster Specialty Insurance Company (Crum), along with defendant insurance providers Allied World Assurance Company (Allied) and Colony Insurance Company (Colony), seek a legal declaration against defendant Willowood USA, LLC (Willowood) that they have no duty to defend Willowood in a companion case before this Court, *Repar Corporation v. Willowood USA, LLC et al.*, Civ. No. 6:13-cv-01043-MC (underlying action).

     This Court is asked to consider whether Crum, Allied, and/or Colony owe Willowood a duty to defend based upon the allegations in the underlying action. Because (1) the allegations in the underlying action do not state a potential claim for either trade libel or defamation and (2) the claims in the underlying action are excluded and/or not covered under the respective policies, this Court finds that neither Crum, Allied, nor Colony owe Willowood a duty to defend in the underlying action. Thus, motions for summary judgment, ECF No. 51 (Allied), ECF No. 55

(Crum), and ECF No. 58 (Colony), are GRANTED, and Willowood's motion for partial summary judgment, ECF No. 53, is DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of an insurance coverage dispute. Because this action relies on the factual allegations in the underlying action, this Court looks to the First Amended Complaint (FAC).[1]

Repar, a corporation in the business of distributing agricultural pesticides, began distributing an agricultural pesticide containing tebuconazole under the trade names TEBUCON 45 DF and TEBUCON 3.6F in 2008. Decl. of Seth H. Row 2–3, ECF No. 57-6. On August 23, 2011, Repar obtained "trademark registration No. 4,015,686 for the TEBUCON mark for various types of pesticide products." *Id*. at 7.

Willowood, also a corporation in the business of distributing agricultural pesticides, was formed in December 2009. *Id*. at 3. Sometime after formation, Brian Heinze, president of Willowood, contacted Bhushan Mandava, president of Repar, to discuss a potential business relationship. *Id*. at 4. Heinze proposed that Willowood "enter into distribution arrangements with Repar allowing Willowood to sell TEBUCON 45 DF and TEBUCON 3.6F under labels showing Willowood as the distributor." *Id*. Willowood subsequently agreed to "maintain the confidentiality of any confidential or proprietary information," to not use "the name TEBUCON except for sales authorized under the EPA Form 8570-5 agreement," and to allow Repar to "be the exclusive supplier of technical grade tebuconazole for both products." *Id*. at 4–5. As a result, Repar granted Willowood a "license to distribute and sell products in connection with the TEBUCON mark as an EPA subregistrant of Repar for the TEBUCON 45 DF and 3.6F products and subject to Repar's quality control." *Id*. at 5.

---

[1] The following facts and corresponding analysis reflect Repar's allegations in the FAC.

Willowood later approached Repar and sought permission to cite Repar's product chemistry data in support of Willowood's primary EPA registration applications for the 45 DF and 3.6F tebuconazole formulations. *Id*. Repar granted Willowood this permission after Willowood again promised to "maintain the confidentiality of this data, to use Repar as its sole supplier of technical-grade tebuconazole, and to use a trade name other than TEBUCON in connection with Willowood's own products containing tebuconazole." *Id*. at 5–6.

After submitting its EPA registration applications, Willowood informed Repar "that [Willowood] would not be purchasing tebuconazole from Repar in the future" and "entered into subregistration agreements with another registration of the two tebuconazole formulations, thereby circumventing Repar as a supplier of technical tebuconazole." *Id*. at 6. Repar withdrew its support for Willowood's EPA registration applications; forcing Willowood to refile. *Id*.

Willowood successfully refiled its EPA registration applications using product chemistry data from another supplier. *Id*. In its refiled EPA registration applications, Willowood identified its products as WILLOWOOD TEBUCON 45DF and WILLOWOOD TEBUCON 3.6 SC. *Id*. "Willowood subsequently began using Repar's TEBUCON mark in connection with the sale and distribution of its own tebuconazole products." *Id*.

Repar now seeks damages and injunctive relief under theories of implied-in-fact contract, quasi-contract/unjust enrichment, Federal Trademark Infringement (15 U.S.C. § 1114), and Federal Unfair Competition (15 U.S.C. § 1125(a)). *See id*. at 9–13.

## <u>STANDARD OF REVIEW</u>

This Court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party.

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id*. The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## DISCUSSION

The insurance providers contend that the claims and allegations in the underlying action are not covered under the respective policies and, to the extent that the claims and allegations are covered, the claims and allegations are excluded.

### I. Policy Coverage

Willowood contends that all three insurance providers must defend because the allegations in the underlying action "fall squarely within the coverage for 'personal and advertising injury' provided by each of the policies." Willowood's Mem. in Supp. of Mot. Partial Summ. J. 19, ECF No. 54. Because all three providers contest coverage, this Court "turn[s] first to the question of whether the insurance policy covered [Repar's] claim." *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 89 (2001).

To answer that question, this Court must examine two documents: the insurance policy and Repar's complaint. *See id*. (citing *Ledford v. Gutoski*, 319 Or. 397, 399 (1994)). "In regard to the insurance policy, [this Court] must determine from its terms and conditions what the parties intended the policy to cover." *Id*. (citing *Hoffman Constr. Co. of Alaska v. Fred S. James & Co.*,

313 Or. 464, 469 (1992)). This Court then examines the complaint to determine if it, without amendment, may impose liability for conduct covered by the policy. *Id.* (citation omitted).

"Oregon determines the intent of the parties to an insurance contract by looking first to the plain meaning of any disputed terms and then to the structure and context of the policy as a whole." *Anderson Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 931 (9th Cir. 2013) (citations omitted). "If the parties' intent cannot be determined by doing so, the policy is construed against the insurer, because any reasonable doubt as to the intended meaning of [an ambiguous] term will be resolved against the insurance company and in favor of extending coverage to the insured." *Id.* (citations and internal quotation marks omitted); *see also Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006) ("If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company." (citations and internal quotation marks omitted)).

Colony's policy extends the "duty to defend the insured against any 'suit'[2] seeking 'damages'" for covered "personal and advertising injur[ies]." Decl. of Seth H. Row 8, ECF No. 57-3; *see also* Decl. of Seth H. Row 10, ECF No. 57-4 (Allied's policy); Decl. of Seth H. Row 3, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 4, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14). Colony's policy defines "personal and advertising injury" as:

> [I]njury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> . . .

---

[2] A "'[s]uit' means a civil proceeding in which 'damages' resulting from . . . 'personal and advertising injury' . . . are alleged." Decl. of Seth H. Row 21, ECF No. 57-3; *see also* Decl. of Seth H. Row 30, ECF No. 57-4 (Allied's policy); Decl. of Seth H. Row 29, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 30, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14).

    d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

. . .

    f.   The use of another's advertising idea in your "advertisement"; or

    g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Decl. of Seth H. Row 29, ECF No. 57-3. This definition of "personal and advertising injury" is the same in Allied's policy, *see* Decl. of Seth H. Row 29, ECF No. 57-4, and is consistent with both of Crum's policies, *see* Decl. of Seth H. Row 27, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 28, ECF No. 57-2 (Crum's policy, effective 3/1/14).[3]

       Willowood argues, in reliance upon the definition of "personal and advertising injury" above, that Repar, in the underlying action, alleges "disparagement" under subsection "d" and "use of another's advertising idea in your 'advertisement'" under subsection "f." Because the policies do not define either "disparagement" or "use of another's advertising idea in your 'advertisement,'" this Court first considers whether the phrases in question have a plain meaning, i.e., whether they are susceptible to only one plausible interpretation. *See Holloway*, 341 Or. at 650. If two or more plausible interpretations are shown, then this Court examines those interpretations in light of the particular context in which those terms are used in the policy and the broader context of the policy as a whole. *Hoffman*, 313 Or. at 470. If two or more plausible

---

[3] The Crum policies alter the wording of subsections "d" as follows:

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Decl. of Seth H. Row 27, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 28, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14).

6 – OPINION AND ORDER

interpretations continue to be reasonable after this additional inquiry, then the policy is construed against the insurer. *See id.* at 470–71.

## A. "Disparagement"

The policies define "personal and advertising injury" in part, as "[o]ral or written publication . . . of material that . . . disparages a[n] . . . organization's goods, products or services." *See, e.g.*, Decl. of Seth H. Row 29, ECF No. 57-3 (Colony's policy). The noun "publication" is defined as "[c]ommunication of information to the public." The American Heritage Dictionary of the English Language 1416 (4th ed. 2000); *see also* The Oxford English Dictionary vol. XII, 782 (2d ed. 2001) ("The action of making publicly known; public notification or announcement; promulgation . . . [n]otification or communication to those concerned, or to a limited number regarded as representing the public."). The verb "disparage" is defined as "[t]o speak of in a slighting or disrespectful way; belittle [and] . . . [t]o reduce in esteem or rank." The American Heritage Dictionary of the English Language 520 (4th ed. 2000); *see also* The Oxford English Dictionary vol. IV, 802 (2d ed. 2001) ("To speak of or treat slightingly; to treat as something lower than it is; to undervalue; to vilify."). Willowood provides an alternative definition of "disparage": "to discredit or bring reproach upon by comparing with something inferior." Willowood's Reply to Mot. Partial Summ. J. 10, ECF No. 74 (quoting Webster's Third New Int'l Dictionary 653 (unabridged ed. 1996)). Combined, these definitions extend policy coverage to "personal and advertising injur[ies]" "arising out of" oral or written material communicated to the public that belittles or discredits another organization's goods or products.

The insurance companies, in response, define subsection "d" more narrowly, as commercial disparagement or "trade libel," *see* Allied's Resp. to Mot. Partial Summ. J. 6–7, ECF

No. 61, defamation, Crum's Mot. Partial Summ. J. 18, ECF No. 55, and unfair competition (15 U.S.C. § 1125(a)(1)(B)), Crum's Resp. to Mot. Partial Summ. J. 8–9, ECF No. 63. These alternative definitions, consistent with tort law, also represent plausible interpretations. *See, e.g.*, *Marleau*, 33 Or. at 94–96 (assessing a claim under an identical provision under the tort of defamation); *Nat'l Union Fire Ins. Co. of Pittsburgh Pa. v. Starplex Corp.*, 220 Or. App. 560, 581–86 (2008) (same); *L & D of Oregon, Inc. v. Am. States Ins. Co.*, 171 Or. App. 17, 22–29 (2000) (same).

Because subsection "d" is susceptible to more than two plausible interpretations, this Court examines those interpretations in the light of the particular context in which those terms are used in the policy and the broader context of the policy as a whole. *Hoffman*, 313 Or. at 470. The policies at issue extend coverage to "suits" seeking "damages" for "personal and advertising injury." *See, e.g.*, Decl. of Seth H. Row 8, ECF No. 57-3. Repar, in the underlying action, seeks "damages" under theories of implied-in-fact contract, quasi-contract/unjust enrichment, Federal Trademark Infringement (15 U.S.C. § 1114), and Federal Unfair Competition (15 U.S.C. § 1125(a)). *See* Decl. of Seth H. Row 9–13, ECF No. 57-6. Because these claims, excluding quasi-contract/unjust enrichment,[4] are excluded from coverage under the various exclusions discussed *infra* § II(A)–(B), the issue is whether the allegations supporting these claims "constitute a *claim* for conduct that the policy covers." *Marleau*, 333 Or. at 90 (emphasis added); *see also Bresee Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 117 (2012) ("As long as the complaint contains allegations that, without amendment, state a basis for a *claim* covered by the policy, the duty to defend arises." (emphasis added)). "That question can be answered only by examining [Repar's] complaint." *Marleau*, 333 Or. at 89.

---

[4] Because this Court finds that Repar's claim for quasi-contract/unjust enrichment is not covered under the policies, this Court declines to assess the applicability of exclusions to that claim.

Turning to the FAC, Willowood contends that Repar alleged "disparagement" in FAC ¶ 23 and "publication" in FAC ¶ 25. Willowood's Mem. in Supp. of Mot. Partial Summ. J. 20, ECF No. 54. The FAC, in relevant part, provides:

> 23.  Willowood's use of a confusingly similar imitation of Repar's TEBUCON mark is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the products offered by Willowood are manufactured by, authorized by, or in some manner associated with Repar, which they are not. The likelihood of confusion, mistake, and deception engendered by Willowood's misappropriation of Repar's mark is causing irreparable harm to the goodwill symbolized by the TEBUCON mark and the reputation for quality that it embodies.

> 25. Willowood continues to improperly and maliciously use the TEBUCON mark in connection with its products in the marketplace, directly and intentionally infringing Repar's registered trademark.

Decl. of Seth H. Row 8, ECF No. 57-6. Willowood further elaborates that "[t]he reference to the 'reputation for quality' of Repar's TEBUCON product clearly indicates the *possibility* that Repar will put on evidence that Willowood's products are of lower quality than Repar's, and that Repar's products' quality has therefore been disparaged by the implicit association of Willowood's products with Repar's." Willowood's Mem. in Supp. of Mot. Partial Summ. J. 20, ECF No. 54 (emphasis added). Because the parties dispute Willowood's use of "possibility," this Court briefly addresses the relevant legal standard.

In assessing Repar's allegations, this Court is not concerned with "*potential* factual determinations," *Bresee Homes, Inc.*, 353 Or. at 124 (emphasis added), and is "not permitted to indulge in what the ultimate facts may show which might or might not bring the incident within the liability terms of the policy," *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 417 (1962); *see also Bresee Homes, Inc.*, 353 Or. at 123 ("[This Court's] analysis of the duty to defend focuses on those allegations  whether or not different or additional facts might be adduced at trial."). Instead, this Court *reasonably* interprets the allegations to determine whether they meet the

"elements of the *tort* at issue." *Marleau*, 333 Or. at 93 (emphasis added); *see also Nat'l Union Fire Ins. Co.*, 220 Or. App. at 347 ("We begin with the question whether the allegations . . . potentially stated a claim for defamation."); *Abrams*, 335 Or. at 400 ("[B]ecause the allegations of intentional conversion include allegations of ordinary conversion, a *tortious act* that is covered under the policy, [defendant] had a duty to defend." (emphasis added)).[5] This Court looks to those *torts* identified by the parties, including: (1) trade libel, (2) defamation, and (3) quasi-contract/unjust enrichment.[6]

### i. Trade Libel

"To prevail on a state law trade libel claim,[7] it must be established that the defendant published false allegations about the plaintiff with malice, and that the plaintiff suffered special damages or pecuniary harm as a result of the publication." *FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1135 (D. Or. 2012) (citing *Soloflex, Inc. v. NordicTrack, Inc.*, Civ. No. 93–545–JE, 1994 WL 568401, at *13 (D. Or. Feb. 11, 1994)); *see also* RESTATEMENT (SECOND) OF TORTS § 623A (1977); 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:99 (4th ed. 2014). Trade libel, unlike classic defamation, "[is] not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his

---

[5] Willowood contends throughout its various filings that this Court need not restrictively interpret coverage provisions through the lens of applicable torts. However, as indicated by Oregon case law, coverage is extended to an insured defendant if the plaintiff in the underlying case asserts a *claim* which includes covered conduct that is not otherwise excluded under the policy.

[6] For purposes of this opinion, this Court assumes that Repar's asserted claims for breach of implied-in-fact contract, Federal Trademark Infringement (15 U.S.C. § 1114), and Federal Unfair Competition (15 U.S.C. § 1125(a)) meet the coverage definition of "disparagement" under subsection "d."

[7] Trade Libel is also referred to as commercial disparagement. *See FLIR Sys., Inc.*, 903 F. Supp. 2d at 1135; *see also* Restatement (Second) of Torts § 626 cmt. a (1977) ("The particular form of injurious falsehood that involves disparagement of quality is commonly called 'trade libel . . . The name [trade libel] no longer has any significance of its own.'"). However, "if the complaint of disparagement is based on unfair competition and not libel, no special damages need be alleged or proved if the plaintiff showed present or possible injury." *Aerosonic Corp. v. Trodyne Corp.*, 402 F.2d 223, 231 (5th Cir. 1968); *see also Fin. Programs, Inc. v. Falcon Financial Servs., Inc.*, 371 F. Supp. 770, 776 (D. Or. 1974) (applying definition of disparagement articulated in *Aerosonic Corp.*).

other business." *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (applying California law).

Willowood interprets Repar's allegations as implying a false statement, including: "that Willowood's TEBUCON products are affiliated with Repar's TEBUCON products." Willowood's Reply to Mot. Partial Summ. J. 9, ECF No. 68. This Court is reluctant to find this interpretation *reasonable*. In *Aetna Cas. & Sur. Co., Inc.*, for example, the Ninth Circuit found that analogous conduct[8] did not raise the possibility of liability under "trade libel" because plaintiff alleged appropriation not disparagement. *C.f. Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1142 (9th Cir. 2003) (finding that the allegations that defendant "imitated its product, thereby infringing [plaintiff's] patent" could not be understood as a disparagement of "an organization's goods, products or services." (internal quotation marks omitted)). Here, as in *Aetna Cas. & Sur. Co., Inc.*, the gravamen of Repar's complaint is that Willowood "palmed off"[9] the "TEBUCON" mark to "trade on the goodwill" of Repar's mark. *See* Decl. of Seth H. Row 12, ECF 57-6. Even if this Court found otherwise, the gravamen of the allegations would remain in trademark, and therefore would be excluded under the policy. *See infra* § II(B)(i). Accordingly, the factual allegations of Repar's FAC do not state a claim for trade libel.

## ii. Defamation

"The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins. Co.*, 220 Or. at 584. "A defamatory statement is one that would subject another to . . . hatred,

---

[8] In *Aetna Cas. & Sur. Co., Inc.*, the plaintiff in the underlying action alleged that the insured party had advertised plaintiff's "distinctive animal tags as their own." 838 F.2d at 349.
[9] "Palming off" refers to a claim "that the defendant attempted to pass off (or 'palm off') its goods as those of the plaintiff." *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989) (citation omitted).

contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Marleau*, 333 Or. at 94 (citation and internal quotation marks omitted).

Repar's complaint does not allege either direct or indirect[10] defamatory statements. *See also Bock v. Zittenfield*, 66 Or. App. 97, 103 (1983) ("[Defendant's] statements were not defamatory, because they did not impugn plaintiff's overall skill, fitness or competence to perform his trade or profession." (citations omitted)). Instead, Repar accuses Willowood of imitating its product and using its mark with "intentional, willful, and malicious intent to trade on the goodwill associated with Repar's TEBUCON mark." Decl. of Seth H. Row 12, ECF No. 57-6. This Court is unprepared to *reasonably* interpret this conduct as constituting a claim of defamation under Oregon law. *See supra* § I(A)(i). Even if this Court found otherwise, the gravamen of the allegations would remain in trademark, and therefore would be excluded under the policy. *See infra* § II(B)(i). Accordingly, the factual allegations of Repar's FAC do not state a claim for defamation.

### iii. Quasi-Contract/Unjust Enrichment

"The term implied contract has also been used to refer to contracts that are implied-in-law or quasi-contracts." *Staley v. Taylor*, 165 Or. App. 256, 262 (2000). However, a quasi-contract is "different from" an implied-in-fact contract. RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. b (1981). "[U]nlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reason of justice." *Id.*; *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298 (1993) ("[A

---

[10] "Defamation by implication is the label commonly given to a claim that requires drawing a defamatory inference from facially nondefamatory communication. When defamation by implication is alleged, this court has held that the link between the communication and the defamatory inference must not be "too tenuous." *Reesman v. Highfill*, 327 Or. 597, 604 (1998) (citations omitted).

quasi-contract] is a remedial device to accomplish substantial justice by preventing unjust enrichment." (citations omitted). Such an obligation "is one that is created . . . without any expression of assent." *Montez*, 175 Or. App. at 536. To establish a quasi-contract, a plaintiff must prove all three of the following: "(1) a benefit was conferred; (2) the recipient was aware that a benefit was received and; (3) under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient to pay for it."[11] *Jaqua*, 125 Or. App. at 298 (citation omitted).

Repar, in support of its quasi-contract/unjust enrichment claim, alleges that it "conveyed a benefit on Willowood by . . . [1] permitting it to buy technical-grade tebuconazole on favorable terms and [2] by allowing Willowood to develop a distribution network for tebuconazole using Repar's products, EPA registration, and trade name." Decl. of Seth H. Row 9, ECF No. 57-6. Repar does not allege that Willowood "belittle[d] or discredit[ed]" Repar's goods or products. Rather, Repar merely seeks to utilize a remedial device to prevent unjust enrichment. Accordingly, Repar's claim for breach of a quasi-contract/unjust enrichment is not covered as "disparagement" under subsection "d."

**B. "Use of Another's Advertising Idea"**

The policies also define "personal and advertising injury" as "[t]he use of another's advertising idea in your 'advertisement.'" *See, e.g.*, Decl. of Seth H. Row 29, ECF No. 57-3. The policies do not define either "advertising" or "idea." The noun "idea" is defined as "[s]omething,

---

[11] In *Jaqua*, the Oregon Appellate Court found:

> For an injustice to be found, one of three things must be true:
>
> > (1) the plaintiff had a reasonable expectation of payment;
> > (2) the defendant should reasonably have expected to pay; or
> > (3) society's reasonable expectations of security of person and property would be defeated by nonpayment.

125 Or. App. at 298 (citation and internal quotation marks omitted).

such as a thought or conception, that potentially or actually exists in the mind as a product of mental activity." The American Heritage Dictionary of the English Language 870 (4th ed. 2000); *see also* The Oxford English Dictionary vol. VII, 614 (2d ed. 2001) ("More generally: A picture or notion of anything conceived by the mind; a conception."). The noun "idea" is modified by the attributive noun "advertising." "Advertising" is defined as "[t]he activity of attracting public attention to a product or business." The American Heritage Dictionary of the English Language 25 (4th ed. 2000); *see also* The Oxford English Dictionary vol. I, 190 (2d ed. 2001) ("A bringing into notice; spec. by paid announcement in a printed journal, by prominent display of placards, etc."). Combined, these definitions extend policy coverage to "personal and advertising injur[ies]" "arising out of" the use of another's thought or conception intended to attract public attention to a product or business in an insured's "advertisement." *See also Imbrie v. State Farm Fire & Cas. Co.*, No. CV-08-888-ST, 2008 WL 4737950, at *6 (D. Or. Oct. 24, 2008) (defining "advertising idea" as "a plan, conception, or design aimed at calling [the violating party's] services to the attention of the public.").

Having defined these terms, this Court looks to the allegations in the underlying action. *See, e.g.*, *Marleau*, 333 Or. at 91. Willowood directs this Court's attention to FAC ¶¶ 17, 25. Willowood's Resp. to Mot. Partial Summ. J. 13, ECF No. 64. Those paragraphs provide:

> 17. Willowood subsequently began using Repar's TEBUCON mark in connection with the sale and distribution of its own tebuconazole products. Repar had not granted Willowood any license to do this.
>
> 25. Willowood continues to improperly and maliciously use the TEBUCON mark in connection with its products in the marketplace, directly and intentionally infringing Repar's registered trademark.

Decl. of Seth H. Row 6, 8, ECF No. 57-6.

Repar's use of the TEBUCON mark in lieu of the chemical name, tebuconazole, represents a thought or conception ("idea"). This "idea" also represents an "advertising idea" under the broad definition identified above, i.e., a conception intended to attract public attention to a product. For example, Repar alleges that the TEBUCON mark "immediately and inherently signified the quality, reputation, and source of these products." Decl. of Seth H. Row 7, ECF No. 57-6. This allegation, in tandem with the paragraphs identified by Willowood, plausibly indicate that Repar used the TEBUCON mark to distinguish its product from the competition, i.e., to attract public attention to the advantages of its own product vis-à-vis its competition. However, to extend coverage to the insured, this "advertising idea" must also be used in an "advertisement."

> Colony's policy defines "advertisement" as:
>
>> "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
>>
>>> a. Notices that are published include material placed on the internet or on similar electronic means of communication; and
>>>
>>> b. Regarding websites, only that part of a website that is about your goods, products, or services for the purposes of attracting customers or supporters is considered an advertisement.

Decl. of Seth H. Row 29, ECF No. 57-3; *see also* Decl. of Seth H. Row 26, ECF No. 57-4 (Allied's policy); Decl. of Seth H. Row 22, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 23, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14). The policies do not define "notice," "broadcast" or "published." The noun "notice" is defined as "[a] written or printed announcement." The American Heritage Dictionary of the English Language 1203 (4th ed. 2000); *see also* The Oxford English Dictionary vol. X, 551 (2d ed. 2001) ("A sign,

placard, etc., conveying some intimation or intelligence."). The verb "broadcast" is defined as "[t]o send out or communicate, especially by radio or television." The American Heritage Dictionary of the English Language 234 (4th ed. 2000); *see also* The Oxford English Dictionary vol. II, 568 (2d ed. 2001) ("To disseminate (a message, news, a musical or drastic performance, or any audible or visible matter) from a radio or television transmitting station to the receiving sets of listeners and viewers; said also of a speaker or performer."). The verb "published" is defined as "[t]o bring to the public attention; announce." The American Heritage Dictionary of the English Language 1417 (4th ed. 2000); *see also* The Oxford English Dictionary vol. XII, 785 (2d ed. 2001) ("Made generally known; publicly announced or declared; officially promulgated or proclaimed; of a book, etc., issued or offered to the public."). Combined, these definitions define "advertisement" as an announcement (e.g., sign or placard) which communicates and/or disseminates information about goods or products to the general public or the specific market segment.

In reliance on FAC ¶¶ 25, 43, Willowood argues that its alleged use of the TEBUCON mark "in connection with its products in the marketplace" meets the policy definition of "advertisement." Willowood's Resp. to Mot. Partial Summ. J. 15, ECF No. 64. However, as noted by the insurance providers, the only specific allegation relating to possible "advertisement" is that Willowood sold its own products "under the TEBUCON mark." *See* Crum's Mot. Partial Summ. J. 20, ECF No. 55. This Court is "not permitted to indulge in what the ultimate facts may show which might . . . bring the incident within the liability terms of the policy." *Blohm v. Glens Falls Ins. Co.*, 231 Or. 410, 417 (1962).

To the extent that Willowood's interpretation is *plausible*, i.e., the TEBUCON mark communicates information about goods or products the general public, this Court declines to

find it *reasonable*. The mere sale of a product bearing another's mark does not constitute an advertisement. *Cf. Am. States Ins. Co. v. Dastar Corp.*, 2006 WL 1514857, at *2 (D. Or. May 25, 2006) ("Sales may result from advertising activities, but sales are not the same thing as advertising."); *U.S. Fidelity & Guar. Co. v. Star Techs.*, Inc., 935 F. Supp. 1110, 1116 (D. Or. 1996) ("[A] sale is not advertising activity; it is merely the desired result of advertising activity." (citation and internal quotation marks omitted)). If it were otherwise, the Trademark Exclusion discussed *infra* § II(B) would be completely superfluous; any applicable Trademark Exclusion would be subsumed by the exception: "this exclusion does not apply to infringement, in your 'advertisement.'" Decl. of Seth H. Row 27, ECF No. 57-3; *see also Rhiner v. Red Shield Ins. Co.*, 228 Or. App. 588, 594 (2009) ("In determining whether a phrase is ambiguous, we do not lightly assume that contract language is superfluous." (citation omitted)). Accordingly, Willowood cannot establish coverage under subsection "f," "use of another's advertising idea in your 'advertisement.'"

## II. Exclusion

"The insurer has the burden of proof that [a claim or action] is excluded." *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527 (1977) (citation omitted). "Also, any ambiguity in an exclusionary clause is strictly construed against the insurer." *Id*. (citation omitted).

Repar, in the underlying action, seeks "damages" under claims asserting: breach of implied-in-fact contract; quasi-contract/unjust enrichment; Federal Trademark Infringement (15 U.S.C. § 1114); and Federal Unfair Competition (15 U.S.C. § 1125(a)). *See* Decl. of Seth H. Row 9–13, ECF No. 57-6. The insurance providers move this Court to preclude insurance

coverage on the basis of various policy exclusions, including: (1) Breach of Contract and (2) Infringement of Trademark.[12] This Court addresses each argument in sequence.

## A. Breach of Contract Exclusion

Colony's policy excludes from "personal and advertising injury" any "claim," including:

### a. Breach of Contract

Based upon or arising out of "personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

Decl. of Seth H. Row 27, ECF No. 57-3.[13] Colony's policy is substantively similar to the other insurance policies. *See* Decl. of Seth H. Row 11, ECF No. 57-4 (Allied's policy); Decl. of Seth H. Row 40, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 41, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14). The insurance providers contend that this provision excludes coverage for Repar's claims asserting breach of implied-in-fact contract and breach of a quasi-contract/unjust enrichment. Because Repar's claim for breach of a quasi-contract/unjust enrichment is not covered under the policy, this Court's inquiry will focus on Repar's claim for breach of implied-in-fact contract.

Neither the term "contract" nor "arising out of" are defined within the policies. The noun "contract" is defined as "[a]n agreement between two or more parties, especially one that is

---

[12] Because this Court finds that the insurance providers do not owe Willowood a duty to defend based upon the allegations and claims in the underlying action, this Court declines to discuss the applicability of additional exclusions and related arguments articulated by the insurance providers.

[13] Colony's policy also provides:

2. Contractual Liability

Based upon or arising out of any liability for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages."

Decl. of Seth H. Row 12, ECF No. 57-3; *see also* Decl. of Seth H. Row 7, ECF No. 57-4 (Allied's policy); Decl. of Seth H. Row 12, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 13, ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14).

18 – OPINION AND ORDER

written and enforceable by law." The American Heritage Dictionary of the English Language

398 (4th ed. 2000); *see also Larson Const. Co. v. Oregon Auto. Ins. Co.*, 450 F.2d 1193, 1195

(9th Cir. 1971) ("By its primary meaning the word 'contract' denotes an agreement between the

parties."). The verb "arise" is defined as "to come into being; originate," The American Heritage

Dictionary of the English Language 96 (4th ed. 2000), and the function word "out of" is defined

as "[f]rom an origin, source, or cause," The American Heritage Dictionary of the English

Language 1250 (4th ed. 2000); *see also Clinical Research Inst. of S. Or., P.C. v. Kemper Ins.*

*Cos.*, 191 Or. App. 595, 601 (2004) (defining "arise" as "to originate from a specified source"

and "out of" as "a function word to indicate either origin or birth or cause or motive" (citation

and internal quotation marks omitted)). Combined, these definitions exclude from coverage

"personal and advertising injury" originating from an agreement between two or more parties.

To decide whether this definition captures Repar's claim for breach of implied-in-fact

contract, this Court looks to Oregon case law. In *Montez v. Roloff Farms, Inc.*, 175 Or. App. 532,

536 (2001), the Oregon Appellate Court explained the relationship between an "implied-in-fact"

and "express" contract as follows:

> An implied-in-fact contract is no different in legal effect from an express
> contract. The only difference between them is the means by which the
> parties manifest their agreement. In an express contract, the parties manifest
> their agreement by their words, whether written or spoken. *In an implied-in-*
> *fact contract, the parties' agreement is inferred, in whole or in part, from*
> *their conduct.*

(citation and internal quotation marks omitted) (emphasis in original); *see also* RESTATEMENT

(SECOND) OF CONTRACTS § 4 cmt. a (1981) (indicating that the difference between express and

implied contracts "lies *merely* in the mode of manifesting assent" (emphasis added)). This

explanation, in tandem with the broad plain meaning definition of "contract" and "arising out of"

above, *see also Clinical Research Inst. of S. Or.*, 191 Or. App. at 601 ("The ordinary meaning of

the words 'arising out of' is very broad" (citation omitted)), clearly indicate that Repar's claim

for breach of implied-in-fact contract is captured by the policy's contract exclusion, *see also*

RESTATEMENT (SECOND) OF CONTRACTS § 1 cmt. f ("The term contract is generic. As commonly

used, and as here defined, it includes varieties described as . . . *implied*." (emphasis added)). This

Court's inquiry is not finished, however.

Willowood also asserts that Repar's allegations fall within the exception to the exclusion.

*See, e.g.*, Willowoods' Resp. to Mot. Partial Summ. J. 18, ECF No. 64. The exception precludes

exclusion if "personal and advertising injury" arises out of "an implied contract to use another's

advertising idea in your 'advertisement.'" Decl. of Seth H. Row 27, ECF No. 57-3. As discussed

more thoroughly *supra* § I(B), this Court is unable to *reasonably* interpret the allegations to meet

the definition of "advertisement." Accordingly, the breach of contract exclusion applies to

Repar's claim for breach of implied-in-fact contract.

## B. Trademark Exclusion

Colony's policy excludes from "personal and advertising injury" any "claim," including:

### c. Infringement of Copyright, Patent, Trademark Or Trade Secret

> Based upon or arising out of "personal and advertising injury" arising out
> of the infringement of copyright, patent, trademark, trade secret or other
> intellectual property rights.
>
> However, this exclusion does not apply to infringement, in your
> "advertisement", of copyright, trade dress or slogan.[14]

Decl. of Seth H. Row 27, ECF No. 57-3. Colony's policy is substantively similar to the other

insurance policies. *See* Decl. of Seth H. Row 11, ECF No. 57-4 (Allied's policy); Decl. of Seth

H. Row 40, ECF No. 57-1 (Crum's policy, effective 3/1/12–3/1/13); Decl. of Seth H. Row 41,

ECF No. 57-2 (Crum's policy, effective 3/1/13–3/1/14). The insurance providers contend that

---

[14] This Court notes that the exception to the exclusion is inapplicable because the allegations in the underlying action cannot be reasonably interpreted to meet the policy definition of "advertisement." *See supra* § I(B).

this provision excludes coverage for Repar's claims asserting Federal Trademark Infringement (15 U.S.C. § 1114) and Federal Unfair Competition (15 U.S.C. § 1125(a)). *See, e.g.*, Crum's Mot. Partial Summ. J. 26, ECF No. 55.

### i. Federal Trademark Infringement

Neither the term "infringement" nor "trademark" are defined within the policies. The noun "infringement" is defined as "[a] violation, as of a law, regulation, or agreement; a breach." The American Heritage Dictionary of the English Language 900 (4th ed. 2000). The noun "infringement" is modified by the attributive noun "trademark." "Trademark" is defined as "[a] name, symbol, or other device identifying a product, officially registered and legally restricted to the use of the owner or manufacturer." The American Heritage Dictionary of the English Language 1829 (4th ed. 2000); *see also* The Oxford English Dictionary vol. XVIII, 351 (2d ed. 2001) ("A mark (secured by legal registration or, in some countries, established by use) used by a manufacturer . . . to distinguish his goods from similar wares of other firms . . . ."). These definitions, combined with this Court's definition of "arising out of," *see supra* § II(A)(i), exclude "personal and advertising injury" if such injury originates in a violation of another's officially registered (or established by use) name or symbol identifying a product.

To prevail on a claim of trademark infringement under 15 U.S.C. § 1114, a party "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."[15] *Network Automation, Inc.*, 638 F.3d at 1144 (citation and internal quotation marks omitted). To meet this burden, Repar alleges that

---

[15] The "consumer confusion" prong is assessed using eight non-exhaustive factors, including:

> [1] strength of the mark; [2] proximity of goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marking channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines.

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011).

Willowood used a "confusingly similar imitation[]" of Repar's officially registered mark (TEBUCON) in violation of 15 U.S.C. § 1114. Decl. of Seth H. Row 7, 10, ECF No. 57-6. These allegations meet the combined definitions provided above, i.e., violation of another's registered (or established by use) name or symbol. Accordingly, the Trademark Exclusion applies to Repar's claim for Federal Trademark Infringement (15 U.S.C. § 1114).

### ii. Federal Unfair Competition

Repar also alleges a claim for Federal Unfair Competition under 15 U.S.C. § 1125(a). Willowood contends that because 15 U.S.C. § 1125(a) prohibits a broader scope of conduct than 15 U.S.C. § 1114, the Trademark Exclusion does not apply to Repar's unfair competition claim. *See, e.g.*, Willowood's Resp. Summ. J. 27, ECF No. 64. This Court looks to § 1125(a).

15 U.S.C. § 1125(a) extends civil liability to any person who "uses in commerce any word, term, name, symbol or device . . .or any false designation of origin, false or misleading descriptions of fact, or false or misleading representation, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." "Whereas [15 U.S.C. § 1114] provides protection *only to registered marks*, [15 U.S.C. § 1125(a)] protects against infringement of unregistered marks and trade dress as well as registered marks, and protects against a wider range of practices such as false advertising and product disparagement. Despite these differences, the analysis under the two provisions is oftentimes identical." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n. 8 (9th Cir. 1999) (citations omitted) (emphasis added); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n. 2 (9th Cir. 1992) ("[T]he elements of infringement and unfair competition claims are essentially the same; the rulings

stand or fall together."); *Golden Nugget, Inc. v. Am. Stock Exch., Inc.*, 828 F.2d 586, 591 (9th Cir. 1987) ("[W]e acknowledge freely that the tort of unfair competition is extremely flexible, and courts are given wide discretion to determine whether conduct is 'unfair.'" (citation omitted)).[16]

The differences between 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are not dispositive in this analysis. This Court previously defined "trademark" to include a "name or symbol identifying a product" registered or *established by use*. In other words, the plain meaning of trademark is broader than the protections afforded under 15 U.S.C. § 1114. As a result, the issue is whether this definition of "trademark" encompasses Repar's unfair competition allegations.

Repar alleges that Willowood used "confusingly similar imitations" of its mark resulting in "confusion, deception and mistake," *and* "made false representations, false descriptions, and false designations of its goods." Decl. of Seth H. Row 12, ECF No. 57-6. Because Repar broadly asserts a unfair competition claim under 15 U.S.C. § 1125(a), this Court's inquiry focuses on those claims which may be derived from a reasonable interpretation of the allegations.

"A federal claim under [15 U.S.C. § 1125(a)] for infringement of an unregistered mark is triggered by a use which 'is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the unregistered mark." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403–404 (9th Cir. 1997); *see also Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 ("To establish . . . an unfair competition claim under [15 U.S.C. § 1125(a)], [plaintiff] must establish that [defendant] is using a mark confusingly similar to a valid, protectable trademark of [plaintiff's].").  Repar's burden is similar, if not identical to a

---

[16] "Can the tort of unfair competition be accurately defined? The simple and honest answer to this question is no—not in the abstract. It is no easier and no more productive of useful results to define generally the exact limits of unfair competition than it is to define the exact limits of what is a 'tort' or a 'civil wrong.'" 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 1:8 (4th ed. 2014).

claim for trademark infringement under 15 U.S.C. § 1114. *See, e.g.*, *Toho Co., Ltd. v. William Morrow & Co., Inc.*, 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998) ("When trademark and unfair competition claims are based on the same infringing conduct, courts apply the same analysis to both claims."). As in Repar's trademark infringement claim, the gravamen of Repar's unfair competition claim is that Willowood used a "confusingly similar imitation" of Repar's mark. Accordingly, this claim arises out of "trademark" and is excluded.

15 U.S.C. § 1125(a) also "protects against a wider range of practices such as false advertising and product disparagement." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 n. 8 (emphasis added). 15 U.S.C. § 1125(a)(1)(B)[17] prohibits "false advertising" and "product disparagement." To assert either claim, *see, e.g.*, *Zenith Elecs. Corp. v. Extec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999) ("This portion of § 43(a) provides the basis for what are generally known as 'false advertising,' 'trade libel,' and 'product disparagement' claims."), a plaintiff must allege five elements, including:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

> (3) the deception is material, in that it is likely to influence the purchasing decision;

---

[17] 15 U.S.C. § 1125(a)(1)(B) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> . . .

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(4) the defendant caused its false statement to enter interstate commerce;

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citations omitted) (false advertising claim); *Zenith Elecs. Corp.,*, 182 F.3d at 1348 (Fed. Cir. 1999) (product disparagement claim); *see also Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 903 (9th Cir. 2007) (recognizing that 15 U.S.C. § 1125(a)(1)(B) "creates liability . . . for product disparagement—i.e., misrepresentation of 'the nature, characteristics, qualities or geographic origin' of 'another person's goods, services, or commercial activities."). Assuming that Repar's allegations in the underlying action state a false advertising claim (which this Court does not decide), this Court is still unable to reasonably interpret the allegations as falling outside of the Trademark Exception. The only form of advertisement identified throughout the underlying action is Willowood's use of the TEBUCON mark. *See, e.g.*, Decl. of Seth H. Row 12, ECF No. 57-6; *see also supra* § I(B) (discussing "advertisement"). Thus, again, the gravamen of the allegations remains in trademark, and therefore Repar's unarticulated claim of false advertising and/or product disparagement is excluded under the policy.

## CONCLUSION

For these reasons, the insurance providers' respective motions for summary judgment, ECF No. 51 (Allied), ECF No. 55 (Crum), and ECF No. 58 (Colony), are GRANTED, and

Willowood's  motion for partial summary judgment,  ECF No. 53, is DENIED.

IT IS SO ORDERED.

DATED this 1st day of August, 2014.

_____/s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**